UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| SEAN TURNBOW, et. al. | ) | 3:12-cv-00290-HDM (WGC) |
| | ) | |
| Plaintiffs, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| LIFE PARTNERS, INC., et. al., | ) | |
| | ) | |
| Defendants. | ) | |

Before the court is Plaintiffs' Motion to Compel Production of Documents. (Doc. # 1.)[1] Non-party defendants Donald T. Cassidy, M.D., Ltd. and Dr. Donald Cassidy (collectively, Cassidy) opposed (Doc. # 20) and Plaintiffs replied (Doc. # 22). The court held a hearing on Plaintiffs' motion to compel on August 16, 2012, and issues the instant Order.

## I. BACKGROUND

This matter arises from litigation currently pending in the United States District Court for the Northern District of Texas, 3:11-cv-01030-M. (Doc. # 1 at 3-4; Doc. # 1-1 at 93-116 (Ex. F).) In that action, Plaintiffs have sued various defendants, including Life Partners, Inc. (LPI). (*Id.*) LPI is engaged in a secondary market for life insurance known as "life settlements," which involves the sale of a previously-issued life insurance policy to a person who is not an insured. (Doc. # 1 at 2; Doc. # 20 at 2.) LPI enters into agreements with life settlement purchasers whereby LPI identifies and assists purchasers in identifying those life settlements to purchase. (*Id.*) The price of the interest purchased

---

[1] Refers to court's docket number.

1  is set by LPI according to a formula that depends on the life expectancy of the insured. (Doc. # 1 at 2.)

2  Since 1999, LPI has engaged Cassidy, a Nevada oncologist, to provide life expectancy assessments for each life settlement transaction, and LPI priced the life settlements based on the life expectancy evaluations prepared by Cassidy. (*See* Doc. # 1 at 2; Doc. # 20 at 2; Doc. # 20-1 (Cassidy Decl.) ¶ 2.) Cassidy estimates that he has received medical records from LPI for more than 10,000 insureds, and the medical records and identity of the insureds are maintained by Cassidy either in email or in electronic format on a laptop provided to him by LPI. (Doc. # 20 at 2; Doc. # 20-1 (Cassidy Decl.) ¶ 3.) Plaintiffs contend that instead of using appropriate life expectancy evaluations prepared by an actuary, LPI utilized the life expectations of Cassidy, whom they claim has no actuarial training or experience, and that LPI incentivized Cassidy to underestimate life expectancies to the detriment of the purchasers. (*Id*.) Therefore, according to Plaintiffs, the life expectancy evaluations provided by Cassidy, along with his methodology, training and experience, and compensation structure are directly relevant to the underlying litigation. (*Id.* at 4.)

Currently pending before the Northern District of Texas are a motion to dismiss filed by LPI and a motion for class certification filed by Plaintiffs. (Doc. # 20 at 2-3.) In addition, a protective order governing confidential material has been entered. (Doc. # 1-1 at 122-132.)

In connection with the underlying litigation, on January 23, 2012, Plaintiffs served Cassidy with a subpoena issued by the United States District Court for the District of Nevada, requesting twenty-five categories of documents. (Doc. # 1 at 4; Doc. # 20 at 3.) After an exchange of communications between counsel concerning the subpoenas, counsel for Cassidy informed Plaintiffs' counsel that Cassidy would not be producing any responsive documents, and advised Plaintiffs' counsel to file a motion to compel in the District of Nevada to resolve the matter. (*See* Doc. # 1 at 4; Doc. # 3 at 5 ¶ 8 (Geraci Decl.).) On January 31, 2012, Cassidy served a formal response to the subpoena, asserting general and specific objections, but produced no documents. (*See* Doc. # 1 at 5-10; Doc. # 20-5 at 2-7.) As a result, Plaintiffs filed the instant motion. After Plaintiffs filed this motion, counsel for Plaintiffs and Cassidy conferred in an effort to resolve the issues concerning Plaintiffs' subpoena. (Doc. # 20 at 4.) As a result of these communications, Cassidy agreed to produce certain responsive documents as well as provide a supplemental response to Plaintiffs' subpoena. (*Id*.)

On July 18, 2012, Cassidy served his Supplemental Responses and Objections to Subpoena. (Doc. # 20 at 4; Doc. # 20-6 at 2-10.) According to Cassidy, he served documents responsive to the subpoena except for one category of documents related to the insureds' medical records and the identity of those insureds. (Doc. # 20 at 1-2, 4.) As to those documents, Cassidy argues that the documents are not relevant and are protected from production under the Health Insurance Portability and Accountability Act of 1996 (HIPPA). (*Id.*)

At the August 16, 2012 hearing on Plaintiffs' motion to compel, the parties represented that they had resolved their dispute except as to Requests. 1, 2, 5, and 6.  The main point of contention between Plaintiffs and Cassidy is Cassidy's objection to the production of documents in response to Requests 1, 2, 5, and 6 on the grounds that the information is not relevant and is protected by state and federal privacy laws, including HIPPA. (Doc. # 1 at 11-13.)  Plaintiffs maintain that the documents are central to their claims and disclosure of these documents in response to a subpoena is expressly permitted under HIPPA because a protective order satisfying HIPPA was entered into in the underlying litigation. (*Id.*; *see also* Prot. Order, Doc. # 1-1 at 122-32.)

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 45 requires that a subpoena for the production of documents be issued "from the court for the district where the production or inspection is to be made." Fed. R. Civ. P. 45(a)(2)(C). "A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection...before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(c)(2)(B). In response to an objection, the party serving the subpoena "may move the issuing court for an order compelling production or inspection." Fed. R. Civ. P. 45(c)(2)(B)(i). Therefore, Plaintiffs have properly moved this court for an order compelling the production of documents pursuant to a subpoena issued in this district.  The court will now resolve Cassidy's objections to the production of documents in response to Requests 1, 2, 5, and 6.

## III.  DISCUSSION

**A. Discovery at Issue**

Plaintiffs' Requests 1, 2, 5, and 6 seek production of the following: (a) all communications

between Cassidy and LPI; (b) all life expectancy assessments performed by Cassidy for LPI; (c) documents relating to evaluations of life expectancy assessments or the accuracy/inaccuracy thereof, including comparisons of his assessments to alternative assessments by others; and (d) documents relating to the accuracy/inaccuracy of Cassidy's life expectancy assessments and/or considerations by LPI to continue/discontinue using Cassidy to provide such assessments. (Doc. # 20-6 at 3-5.)  In the supplemental response, Cassidy agreed to produce responsive documents to these requests, except where documents responsive to the request would include the identity or medical records of an insured.  (*Id*.)

Accordingly, the court's inquiry is focused on Cassidy's refusal to produce documents that contain an insured's medical records and/or information related to his or her identity.

**B. Relevance**

First, Cassidy argues the documents sought by Plaintiffs are not relevant nor reasonably calculated to lead to the discovery of admissible evidence. (Doc. # 20 at 5.) Cassidy maintains that a ruling by the Magistrate Judge in the Northern District of Texas on a motion to compel brought with respect to discovery requests served by Plaintiffs on LPI is dispositive of this issue. (Doc. # 20 at 5.)

The court disagrees.  Pursuant to Federal Rule of Civil Procedure 26(b), Plaintiffs "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" and "[r]elevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.  R.  Civ.  P.  26(b)(1).

In the case pending before the Northern District of Texas, Plaintiffs requested the production of documents that LPI had produced to the Securities and Exchange Commission (SEC) which contained the specific search terms "LE," "life expectancy," and "Cassidy." (*See* Ex.  K to Pl.'s Reply (Doc. # 22).)  In response, LPI objected, and Plaintiffs filed a motion to compel.  (Doc. # 22 at 3; Ex. K to Doc. # 22.)  The request for production was apparently based on Plaintiffs' assumption that LPI maintained a litigation database of documents produced in connection with the SEC investigation, and could easily run a search of the proposed terms and provide Plaintiffs with responsive documents. (Doc. # 22 at 3.) LPI opposed the motion to compel, and in connection with their opposition filed the affidavit of their General Counsel, R.  Scott Peden.  (Doc. # 22 at 3; Ex.  L to Doc. # 22.)  Mr.  Peden

4

1    confirmed that in connection with the SEC investigation, LPI produced millions of documents, and
2    did not maintain a litigation database with respect to all of the documents produced to the SEC. (Ex.
3    L to Doc. # 22 ¶¶ 5, 11-12.) Mr. Peden further stated that the universe of documents produced to the
4    SEC were in PDF format in separate files. (*Id.*) Therefore, he concluded that LPI could not prepare a
5    cost or time estimate to locate, retrieve, redact, and produce the documents requested.  (*Id.* ¶ 13.)

6    Magistrate Judge Stickney held a hearing on Plaintiffs' motion to compel. (*See* Doc. # 22 at
7    4; Ex. M to Doc. # 22 (Trans. of Hearing).) At the hearing, defense counsel represented that each
8    insured filed has its own file, so in order to search the files for the terms "LE," life expectancy" or
9    "Cassidy," each separate file would have to be opened and searched, and the medical records and
10   handwritten notes contained within them would not be searchable. (Ex. M to Doc. # 22 at 10:10-23.)

11   It was in this context that Magistrate Judge Stickney ultimately denied the motion to compel,
12   determining that the requests at issue were overbroad and unduly burdensome. (Ex. M to Doc. # 22
13   at 18:1-7.) He specifically found, "It can't be searched this way, so you're going to have to find
14   something else if you're going to get those documents." (*Id.* 18:7-9.) The court agrees with Plaintiffs
15   that Magistrate Judge Stickney did not conclude that documents containing Cassidy's life expectancy
16   evaluations, the identities of the insureds or their medical information were irrelevant to Plaintiffs'
17   claims.

18   In fact, in discussing the necessity of obtaining the life expectancy evaluation materials, the
19   court specifically asked Plaintiffs, "Well, can't you get the methodology from Dr. Cassidy?" (Ex. M
20   to Doc. # 22 at 7:12-13.) Plaintiffs counsel responded, "Actually, he's resisting our subpoena, Your
21   Honor, so I don't know the answer to that and I don't know how far back his records go. I know a lot
22   more about what Life Partners has and they're here in Texas and he's in Reno, Nevada." (*Id.* at 7:14-
23   19.) Magistrate Judge Stickney ruled that the requests, as propounded to LPI, were overbroad and
24   unduly burdensome. He did not rule that the life expectancy evaluation and methodology documents
25   were not relevant to Plaintiffs' case or that they were not likely to lead to the discovery of admissible
26   evidence.

27   The court finds that the documents that are the subject of the instant motion, sought by
28   subpoena to Cassidy, are highly relevant to Plaintiffs' case, as Plaintiffs claim that LPI, through

5

Cassidy, systematically underestimated life expectancies with respect to the policies covered by the Class Action Complaint. To further demonstrate the discoverability of these documents, Plaintiffs provided their expert's report, which supports Plaintiffs' position that in order to prove their case, they must evaluate the actual survival times of the entire group of insureds covered by the Class Action from the life expectancy estimates provided by Cassidy. (*See* Pl.'s Expert Report at Ex. N to Doc. # 22.) Therefore, the court finds that the documents sought in Requests 1, 2, 5, and 6 of Plaintiffs' subpoena to Cassidy are relevant and discoverable, and overrules Cassidy's objection in that respect.

**C. HIPPA Objection**

Next, Cassidy maintains that the information sought by Plaintiffs is protected from production pursuant to HIPPA. (Doc. # 20 at 7.)

This district has squarely addressed this issue of the production of protected health information pursuant to a subpoena under HIPPA:

> 45 C.F.R. § 164.512(e)(1)(i) provides that a covered entity may disclose protected health information in the course of any judicial or administrative proceeding in response to an order of a court or administrative tribunal provided that the covered entity discloses only the protected health information expressly authorized by such order. Production of protected health information should only be made subject to a "qualified protective order" which the regulation states means an order of the court or administrative tribunal that (A) prohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested and (B) requires the return of the information to the covered entity or the destruction of the information at the end of the litigation proceeding.

*Powell v. Texvans, Inc.*, 2010 WL 4791507, at * 2 (D. Nev. Nov. 18, 2010) (citing 45 C.F.R. § 164.512(e)(1)(v); *Bayne v. Provost*, 359 F.Supp.2d 234, 236-38 (N.D.N.Y. 2005)).

Here, Plaintiffs have subpoenaed documents which encompass life expectancy evaluations and related documents that may contain the identity of the insured and his or her medical records. The court has found that they these documents are relevant to Plaintiffs' claims in the underlying litigation, and therefore are discoverable. A qualified protective order consistent with 45 C.F.R. § 164.512(e)(1)(v) has been entered in the underlying litigation. (*See* Prot. Order, Doc. # 1-1 at 122-32.) Accordingly, the court finds the documents responsive to Requests 1, 2, 5 and 6 are not precluded from production by HIPPA.

At the hearing on this motion, the court raised the issue of whether the records could be

produced in redacted form, omitting the insureds' identifying information, and received the satisfactory response from Plaintiffs' counsel that their expert needed the identifying information, including the name and social security number of each insured in order to ascertain the survival time of the insured. The court received assurances that if the identifying information were produced it would be sufficiently protected under the qualified protective order. Therefore, the court overrules Cassidy's objection and grants Plaintiffs' motion insofar as it seeks to compel the production of protected health information in connection with Requests 1, 2, 5, and 6.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' motion to compel responses to Requests 1, 2, 5, and 6 (Doc. # 1) is **GRANTED**. The motion is **DENIED AS MOOT** with respect to the remaining requests, as the parties represented at the hearing that they had resolved their dispute as to those requests. Finally, the court also notes that at the August 16, 2012 hearing, the parties represented that they would work out the logistics of the transfer of files among themselves.

**IT IS SO ORDERED**.

DATED: August 20, 2012.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE