1
2
3
4
5
6
7                      **UNITED STATES DISTRICT COURT**

8                          **DISTRICT OF NEVADA**

9

10   SEAN TURNBOW, et. al.                )   3:12-cv-00290-HDM (WGC)
                                          )
11                  Plaintiffs,           )   **ORDER**
                                          )
12        vs.                             )
                                          )
13    LIFE PARTNERS, INC., et. al.,       )
                                          )
14                  Defendants.           )
     ─────────────────────────────────── )

15

16        Before the court is Plaintiffs' Motion to Compel Production of Documents. (Doc. # 1.)[1] Non-

17   party defendants Donald T. Cassidy, M.D., Ltd. and Dr. Donald Cassidy (collectively, Cassidy)

18   opposed (Doc. # 20) and Plaintiffs replied (Doc. # 22). The court held a hearing on Plaintiffs' motion

19   to compel on August 16, 2012, and issues the instant Order.

20                            **I.  BACKGROUND**

21        This matter arises from litigation currently pending in the United States District Court for the

22   Northern District of Texas, 3:11-cv-01030-M. (Doc. # 1 at 3-4; Doc. # 1-1 at 93-116 (Ex. F).) In that

23   action, Plaintiffs have sued various defendants, including Life Partners, Inc. (LPI). (*Id.*) LPI is engaged

24   in a secondary market for life insurance known as "life settlements," which involves the sale of a

25   previously-issued life insurance policy to a person who is not an insured. (Doc. # 1 at 2; Doc. # 20 at

26   2.) LPI enters into agreements with life settlement purchasers whereby LPI identifies and assists

27   purchasers in identifying those life settlements to purchase. (*Id.*) The price of the interest purchased

28

─────────────
[1] Refers to court's docket number.

1    is set by LPI according to a formula that depends on the life expectancy of the insured. (Doc. # 1 at 2.)

2    Since 1999, LPI has engaged Cassidy, a Nevada oncologist, to provide life expectancy

3    assessments for each life settlement transaction, and LPI priced the life settlements based on the life

4    expectancy evaluations prepared by Cassidy. (*See* Doc. # 1 at 2; Doc. # 20 at 2; Doc. # 20-1 (Cassidy

5    Decl.)  ¶ 2.) Cassidy estimates that he has received medical records from LPI for more than 10,000

6    insureds, and the medical records and identity of the insureds are maintained by Cassidy either in email

7    or in electronic format on a laptop provided to him by LPI. (Doc. # 20 at 2; Doc. # 20-1 (Cassidy

8    Decl.) ¶ 3.) Plaintiffs contend that instead of using appropriate life expectancy evaluations prepared

9    by an actuary, LPI utilized the life expectations of Cassidy, whom they claim has no actuarial training

10   or experience, and that LPI incentivized Cassidy to underestimate life expectancies to the detriment

11   of the purchasers. (*Id*.) Therefore, according to Plaintiffs, the life expectancy evaluations provided by

12   Cassidy, along with his methodology, training and experience, and compensation structure are directly

13   relevant to the underlying litigation. (*Id.*  at 4.)

14   Currently pending before the Northern District of Texas are a motion to dismiss filed by LPI

15   and a motion for class certification filed by Plaintiffs. (Doc. # 20 at 2-3.) In addition, a protective order

16   governing confidential material has been entered. (Doc. # 1-1 at 122-132.)

17   In connection with the underlying litigation, on January 23, 2012, Plaintiffs served Cassidy

18   with a subpoena issued by the United States District Court for the District of Nevada, requesting

19   twenty-five categories of documents. (Doc. # 1 at 4; Doc. # 20 at 3.) After an exchange of

20   communications between counsel concerning the subpoenas, counsel for Cassidy informed Plaintiffs'

21   counsel that Cassidy would not be producing any responsive documents, and  advised Plaintiffs'

22   counsel to file a motion to compel in the District of Nevada to resolve the matter. (*See* Doc. # 1 at 4;

23   Doc. # 3 at 5 ¶ 8 (Geraci Decl.).) On January 31, 2012, Cassidy served a formal response to the

24   subpoena, asserting general and specific objections, but produced no documents. (*See* Doc. # 1 at 5-10;

25   Doc. # 20-5 at 2-7.) As a result, Plaintiffs filed the instant motion. After Plaintiffs filed this motion,

26   counsel for Plaintiffs and Cassidy conferred in an effort to resolve the issues concerning Plaintiffs'

27   subpoena. (Doc. # 20 at 4.) As a result of these communications, Cassidy agreed to produce certain

28   responsive documents as well as provide a supplemental response to Plaintiffs' subpoena. (*Id*.)

1    On July 18, 2012, Cassidy served his Supplemental Responses and Objections to Subpoena.

2    (Doc. # 20 at 4; Doc. # 20-6 at 2-10.) According to Cassidy, he served documents responsive to the

3    subpoena except for one category of documents related to the insureds' medical records and the

4    identity of those insureds. (Doc. # 20 at 1-2, 4.) As to those documents, Cassidy argues that the

5    documents are not relevant and are protected from production under the Health Insurance Portability

6    and Accountability Act of 1996 (HIPPA). (*Id*.)

7    At the August 16, 2012 hearing on Plaintiffs' motion to compel, the parties represented that

8    they had resolved their dispute except as to Requests. 1, 2, 5, and 6.  The main point of contention

9    between Plaintiffs and Cassidy is Cassidy's objection to the production of documents in response to

10   Requests 1, 2, 5, and 6 on the grounds that the information is not relevant and is protected by state and

11   federal privacy laws, including HIPPA. (Doc. # 1 at 11-13.)  Plaintiffs maintain that the documents

12   are central to their claims and disclosure of these documents in response to a subpoena is expressly

13   permitted under HIPPA because a protective order satisfying HIPPA was entered into in the underlying

14   litigation. (*Id*.; *see also* Prot.  Order, Doc. # 1-1 at 122-32.)

15                              **II.  LEGAL STANDARD**

16   Federal Rule of Civil Procedure 45 requires that a subpoena for the production of documents

17   be issued "from the court for the district where the production or inspection is to be made." Fed.  R.

18   Civ.  P.  45(a)(2)(C). "A person commanded to produce documents or tangible things or to permit

19   inspection may serve on the party or attorney designated in the subpoena a written objection...before

20   the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed.  R.  Civ.

21   P.  45(c)(2)(B). In response to an objection, the party serving the subpoena "may move the issuing

22   court for an order compelling production or inspection." Fed.  R.  Civ.  P.  45(c)(2)(B)(i).  Therefore,

23   Plaintiffs have properly moved this court for an order compelling the production of documents

24   pursuant to a subpoena issued in this district.  The court will now resolve Cassidy's objections to the

25   production of documents in response to Requests 1, 2, 5, and 6.

26                              **III.  DISCUSSION**

27   **A.  Discovery at Issue**

28   Plaintiffs' Requests 1, 2, 5, and 6 seek production of the following: (a) all communications

3

1    between Cassidy and LPI; (b) all life expectancy assessments performed by Cassidy for LPI;

2    (c) documents relating to evaluations of life expectancy assessments or the accuracy/inaccuracy

3    thereof, including comparisons of his assessments to alternative assessments by others; and

4    (d) documents relating to the accuracy/inaccuracy of Cassidy's life expectancy assessments and/or

5    considerations by LPI to continue/discontinue using Cassidy to provide such assessments. (Doc. # 20-

6    6 at 3-5.)  In the supplemental response, Cassidy agreed to produce responsive documents to these

7    requests, except where documents responsive to the request would include the identity or medical

8    records of an insured.  (*Id*.)

9            Accordingly, the court's inquiry is focused on Cassidy's refusal to produce documents that

10   contain an insured's medical records and/or information related to his or her identity.

11   **B. Relevance**

12           First, Cassidy argues the documents sought by Plaintiffs are not relevant nor reasonably

13   calculated to lead to the discovery of admissible evidence. (Doc. # 20 at 5.) Cassidy maintains that a

14   ruling by the Magistrate Judge in the Northern District of Texas on a motion to compel brought with

15   respect to discovery requests served by Plaintiffs on LPI is dispositive of this issue. (Doc. # 20 at 5.)

16           The court disagrees.  Pursuant to Federal Rule of Civil Procedure 26(b), Plaintiffs "may obtain

17   discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" and

18   "[r]elevant information need not be admissible at trial if the discovery appears reasonably calculated

19   to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

20           In the case pending before the Northern District of Texas, Plaintiffs requested the production

21   of documents that LPI had produced to the Securities and Exchange Commission (SEC) which

22   contained the specific search terms "LE," "life expectancy," and "Cassidy." (*See* Ex. K to Pl.'s Reply

23   (Doc. # 22).)  In response, LPI objected, and Plaintiffs filed a motion to compel.  (Doc. # 22 at 3; Ex.

24   K to Doc. # 22.)  The request for production was apparently based on Plaintiffs' assumption that LPI

25   maintained a litigation database of documents produced in connection with the SEC investigation, and

26   could easily run a search of the proposed terms and provide Plaintiffs with responsive documents.

27   (Doc. # 22 at 3.) LPI opposed the motion to compel, and in connection with their opposition filed the

28   affidavit of their General Counsel, R. Scott Peden.  (Doc. # 22 at 3; Ex. L to Doc. # 22.)  Mr. Peden

4

1    confirmed that in connection with the SEC investigation, LPI produced millions of documents, and

2    did not maintain a litigation database with respect to all of the documents produced to the SEC. (Ex.

3    L to Doc. # 22 ¶¶ 5, 11-12.) Mr. Peden further stated that the universe of documents produced to the

4    SEC were in PDF format in separate files. (*Id.*) Therefore, he concluded that LPI could not prepare a

5    cost or time estimate to locate, retrieve, redact, and produce the documents requested. (*Id.* ¶ 13.)

6          Magistrate Judge Stickney held a hearing on Plaintiffs' motion to compel. (*See* Doc. # 22 at

7    4; Ex. M to Doc. # 22 (Trans. of Hearing).) At the hearing, defense counsel represented that each

8    insured filed has its own file, so in order to search the files for the terms "LE," life expectancy" or

9    "Cassidy," each separate file would have to be opened and searched, and the medical records and

10   handwritten notes contained within them would not be searchable. (Ex. M to Doc. # 22 at 10:10-23.)

11         It was in this context that Magistrate Judge Stickney ultimately denied the motion to compel,

12   determining that the requests at issue were overbroad and unduly burdensome. (Ex. M to Doc. # 22

13   at 18:1-7.) He specifically found, "It can't be searched this way, so you're going to have to find

14   something else if you're going to get those documents." (*Id.* 18:7-9.) The court agrees with Plaintiffs

15   that Magistrate Judge Stickney did not conclude that documents containing Cassidy's life expectancy

16   evaluations, the identities of the insureds or their medical information were irrelevant to Plaintiffs'

17   claims.

18         In fact, in discussing the necessity of obtaining the life expectancy evaluation materials, the

19   court specifically asked Plaintiffs, "Well, can't you get the methodology from Dr. Cassidy?" (Ex. M

20   to Doc. # 22 at 7:12-13.) Plaintiffs counsel responded, "Actually, he's resisting our subpoena, Your

21   Honor, so I don't know the answer to that and I don't know how far back his records go. I know a lot

22   more about what Life Partners has and they're here in Texas and he's in Reno, Nevada." (*Id.* at 7:14-

23   19.) Magistrate Judge Stickney ruled that the requests, as propounded to LPI, were overbroad and

24   unduly burdensome. He did not rule that the life expectancy evaluation and methodology documents

25   were not relevant to Plaintiffs' case or that they were not likely to lead to the discovery of admissible

26   evidence.

27         The court finds that the documents that are the subject of the instant motion, sought by

28   subpoena to Cassidy, are highly relevant to Plaintiffs' case, as Plaintiffs claim that LPI, through

1   Cassidy, systematically underestimated life expectancies with respect to the policies covered by the

2   Class Action Complaint. To further demonstrate the discoverability of these documents, Plaintiffs

3   provided their expert's report, which supports Plaintiffs' position that in order to prove their case, they

4   must evaluate the actual survival times of the entire group of insureds covered by the Class Action

5   from the life expectancy estimates provided by Cassidy. (*See* Pl.'s Expert Report at Ex. N to Doc. #

6   22.) Therefore, the court finds that the documents sought in Requests 1, 2, 5, and 6 of Plaintiffs'

7   subpoena to Cassidy are relevant and discoverable, and overrules Cassidy's objection in that respect.

8   **C.  HIPPA Objection**

9       Next, Cassidy maintains that the information sought by Plaintiffs is protected from production

10   pursuant to HIPPA. (Doc. # 20 at 7.)

11       This district has squarely addressed this issue of the production of protected health information

12   pursuant to a subpoena under HIPPA:

13       45 C.F.R. § 164.512(e)(1)(i) provides that a covered entity may disclose protected
        health information in the course of any judicial or administrative proceeding in
14       response to an order of a court or administrative tribunal provided that the covered
        entity discloses only the protected health information expressly authorized by such
15       order. Production of protected health information should only be made subject to a
        "qualified protective order" which the regulation states means an order of the court or
16       administrative tribunal that (A) prohibits the parties from using or disclosing the
        protected health information for any purpose other than the litigation or proceeding for
17       which such information was requested and (B) requires the return of the information
        to the covered entity or the destruction of the information at the end of the litigation
18       proceeding.
    *Powell v. Texvans, Inc.*, 2010 WL 4791507, at * 2 (D. Nev. Nov. 18, 2010) (citing 45 C.F.R. §
19
    164.512(e)(1)(v); *Bayne v. Provost*, 359 F.Supp.2d 234, 236-38 (N.D.N.Y. 2005)).
20
        Here, Plaintiffs have subpoenaed documents which encompass life expectancy evaluations and
21
    related documents that may contain the identity of the insured and his or her medical records. The
22
    court has found that they these documents are relevant to Plaintiffs' claims in the underlying litigation,
23
    and therefore are discoverable. A qualified protective order consistent with 45 C.F.R.
24
    § 164.512(e)(1)(v) has been entered in the underlying litigation. (*See* Prot. Order, Doc. # 1-1 at 122-
25
    32.) Accordingly, the court finds the documents responsive to Requests 1, 2, 5 and 6 are not precluded
26
    from production by HIPPA.
27
        At the hearing on this motion, the court raised the issue of whether the records could be
28

6

1  produced in redacted form, omitting the insureds' identifying information, and received the satisfactory

2  response from Plaintiffs' counsel that their expert needed the identifying information, including the

3  name and social security number of each insured in order to ascertain the survival time of the insured.

4  The court received assurances that if the identifying information were produced it would be sufficiently

5  protected under the qualified protective order.  Therefore, the court overrules Cassidy's objection and

6  grants Plaintiffs' motion insofar as it seeks to compel the production of protected health information

7  in connection with Requests  1, 2, 5, and 6.

8  ## IV.  CONCLUSION

9  For the foregoing reasons, Plaintiffs' motion to compel responses to Requests 1, 2, 5, and 6

10  (Doc. # 1) is **GRANTED**.  The motion is **DENIED AS MOOT** with respect to the remaining requests,

11  as the parties represented at the hearing that they had resolved their dispute as to those requests.

12  Finally, the court also notes that at the August 16, 2012 hearing, the parties represented that they would

13  work out the logistics of the transfer of files among themselves.

14  **IT IS SO ORDERED**.

15  DATED: August 20, 2012.

16

17  _____
      WILLIAM G.  COBB
18  UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28